## 46512. TERRY v. THE STATE.
### (377 SE2d 837)

MARSHALL, Chief Justice.

The appellant in this case, Michael Devern Terry, a/k/a James Potts, was indicted in a six-count indictment charging him with a series of six murders, occurring between the dates of December 6, 1985, and October 20, 1986.[1] The appellant's motion for severance of of-

---

[1] The six-count murder indictment was returned in the Fulton Superior Court on De-

fenses was granted, with the case proceeding to trial on Counts 1 and 2 of the indictment in February of 1987. The appellant was convicted thereon, and given two consecutive sentences of life imprisonment. The case next proceeded to trial on Count 5 in April of 1988, and the state gave notice of its intent to seek the death penalty. Although it was held in *State v. Terry*, 257 Ga. 473 (360 SE2d 588) (1987), that the state was authorized in seeking the death penalty on the grounds urged, at the trial of the case the jury was hopelessly deadlocked on the death-penalty issue, and a third consecutive sentence of life imprisonment was imposed. This is the appellant's direct appeal from his conviction on Count 5. We affirm.

## Facts

The Count-5 murder victim was Mr. George Willingham. On the night of the murder, the appellant had given the victim money with which to purchase "reefer," but the victim "messed up" by purchasing cocaine instead. During the early morning hours of September 13, 1986, the appellant and the victim were walking in the area of Boulevard in Fulton County. They began arguing about the appellant's money, and when the victim refused to return the money to the appellant, the appellant shot the victim with a .38 caliber firearm and then stabbed him with a knife.

The victim's body was discovered at approximately 5:00 p.m. on September 13, 1986, in a field near Boulevard. The victim's clothing was in disarray, with his pants and underwear having been pulled down around his ankles, and his shirt was open. The victim had sustained three gunshot wounds to the head, one of which was to the back of the skull and was established as the cause of death; there was also a series of long, linear incisions in the victim's chest area.

During 1986, the Atlanta Police Department was involved in a serial-homicide investigation; the victims of this homicide investigation were several black males in their mid-twenties, whose bodies had been discovered in the same area of northwest Atlanta.

After severing the trial of Count 5 of the indictment from the remaining counts, the trial judge conducted a pretrial hearing for the purpose of determining whether the facts surrounding the other five murders were sufficiently similar to the facts of this murder, such that the evidence as to the other crimes was admissible at the trial of this

---

cember 5, 1986. Following a trial by jury as to Count 5, which commenced on April 11, 1988, the appellant was found guilty on April 14, 1988, and given a sentence of life imprisonment on April 15. His notice of appeal was filed on May 16, 1988. The appeal was docketed in this court on December 14, 1988, and the case was submitted for decision without oral argument on February 15, 1989.

crime for the purpose of showing motive, intent, plan or scheme, identity, bent of mind, or course of conduct.

The similarities are as follows: The bodies of the other five victims were all discovered with the victim's pants having been either pulled down or opened. The bodies of two of the other victims were discovered in the same area as the body of George Willingham, and the bodies of another two of the victims were discovered in an area near appellant's residence. Three of the other victims sustained entry gunshot wounds to the back of the skull, as did George Willingham. One of the bullets recovered from Willingham's body, and a bullet recovered from the body of another victim, were both .38 caliber bullets fired from the same weapon. The bullets recovered from two of the other victims were also .38 caliber bullets which had been fired from the same weapon. Two of the other victims sustained stab wounds similar to Willingham's.

After the appellant's arrest, he gave certain incriminatory statements to law-enforcement authorities. The state's evidence shows that before questioning, the appellant was given his *Miranda* rights, and, after he stated that he understood those rights, he gave an oral statement to the police; the appellant then proceeded to give this statement again while being taped. After the taped statement, the appellant again was given his *Miranda* rights; and a waiver-of-counsel form, which was admitted in evidence, was signed by him. He then gave a written statement to the police; after the written statement was given, he reviewed it and signed each page. At no time did he request an attorney; and prior to giving the incriminatory admissions, he stated that he "wished to tell them about it."

In these statements to the police, the appellant admitted shooting the victim with a .38 caliber weapon, and stabbing the victim; he also acknowledged that he possessed three handguns, that he had used two of these handguns to inflict the six murders alleged in the six-count indictment, and that one of his handguns was a .38 caliber Smith & Wesson weapon. In a later statement given by the appellant to the police, he stated that he shot Willingham with two weapons; consistent with this statement, two of the bullets recovered from Willingham's body were .38 caliber bullets, and one was a .32 caliber bullet. He further admitted that he had also killed the other five victims, as well as the victim in this case, after he had had sex with all of them and then became angry.

Willingham's autopsy showed that he had engaged in anal sex prior to his death, as did the autopsies of the other murder victims, except the Count-1 and Count-2 victims, whose autopsy reports did not include anal examinations.

In this appeal, the appellant advances two enumerations of error.

1. First, he contends that the court below erred in admitting the

evidence concerning the other murders alleged in the six-count indictment, in that the degree of similarity between these other crimes and the crime in this case is insufficient to support admission of the "other crimes" evidence.

The appellant proceeds to argue that since his request for severance of offenses was granted here, it necessarily follows that evidence of the independent crimes should have been held to have been inadmissible. In this regard, the appellant argues that since the multiple offenses were joined for trial on the ground of their similar character, the trial court's grant of a severance of offenses was necessarily predicated on the finding that the multiple offenses were not of a similar character.

These arguments advanced by the appellant demonstrate a misreading of the applicable case law.

*Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975), concerns the issue of severance of offenses. *Dingler* holds that where multiple offenses have been joined solely on the ground that they are of the same or similar character, the defendant has an absolute right to a severance of the offenses. Where, however, two or more offenses are joined on grounds that they are of the same or similar character, and are part of a single scheme or plan, or are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, the trial court, in its discretion, should grant a severance of offenses if it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each charge; in this regard, the question for decision is whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Accord *Whisenhunt v. State*, 156 Ga. App. 583 (10) (275 SE2d 82) (1980).

These criteria for severance of offenses are the same in cases in which the death penalty is sought, as in other cases. *Jarrell v. State*, 234 Ga. 410 (1) (216 SE2d 258) (1975); OCGA § 16-1-7 (c).[2]

For evidence of other criminal acts to be admissible, the state must show two things. First, the defendant was the perpetrator of the independent crime. Second, there is a sufficient similarity or connection between the extrinsic act and the crime charged such that proof of the former tends to prove the latter. *Williams v. State*, 251 Ga. 749, 755 (312

---

[2] However, the defendant is, as a matter of right, entitled to be tried separately, when two or more defendants are jointly indicted for a capital offense as to which the state seeks the imposition of the death penalty. OCGA § 17-8-4; *Reaves v. State*, 242 Ga. 542 (3) (250 SE2d 376) (1978).

SE2d 40) (1983).

*Gladson v. State,* 253 Ga. 489, 491-492 (2) (322 SE2d 45) (1984).
As further held in *Gladson,* "[a]fter proof of the two above stated conditions, evidence of the prior acts [is] admissible to prove motive, intent, absence of mistake or accident, plan or scheme, and identity. *Williams,* supra." 253 Ga. at 492. And, where the trial court instructs the jury that the evidence has been admitted only for the limited, evidentiary purpose, no error appears.

Thus, we find no merit to the appellant's suggestion that the evidentiary standards regulating the severance of jointly-indicted offenses is the same as that controlling the introduction of "similar crimes" evidence. The grounds for severance of offenses, as enunciated in *Dingler,* are premised on the confusion which would be engendered in the minds of the jurors if they were confronted with the necessity of reaching an ultimate disposition regarding the defendant's guilt or innocence with respect to each of the several crimes. The trial court's grant of a severance of jointly-indicted offenses, either on a mandatory or discretionary basis under *Dingler,* in no way constitutes a finding that the multiple offenses are not of the same or similar character.

In the instant case, the other-crimes evidence was introduced for a limited evidentiary purpose, as to which the trial court instructed the jury. The appellant's identity as the perpetrator of the independent crimes was established through his own incriminatory admissions to police. Cf. *French v. State,* 237 Ga. 620 (229 SE2d 410) (1976). We agree with the trial court that a sufficient similarity existed between the crime charged and the other crimes, such that proof of the latter tended to prove the former. See *Williams v. State,* supra. We find no error.

2. Second, the appellant contends that the trial court erred in admitting in evidence his pretrial statements to law-enforcement authorities. Again, we find no error.

At trial, the appellant did not allege that he had asserted his right to counsel prior to giving the statements admitted in evidence. Rather, his contention was that, although he had not been harmed, threatened, forced, or bribed by the law-enforcement authorities to give the incriminatory statements, the statements were, in fact, a lie, the giving of which was induced by the state.

A trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous. E.g., *James v. State,* 257 Ga. 62 (3) (355 SE2d 60) (1987). The trial court's credibility determinations here were not clearly erroneous.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 6, 1989.

*L. David Wolfe*, for appellant.

*Lewis R. Slaton, District Attorney, John M. Turner, Jr., Nancy A. Grace, Assistant District Attorneys, Michael J. Bowers, Attorney General, Leonora Grant*, for appellee.