## A00A0014. HERNANDEZ v. THE STATE.

(537 SE2d 149)

SMITH, Presiding Judge.

Arturo Hernandez appeals from the trial court's denial of his plea in bar made on the ground of double jeopardy after the trial court declared a mistrial over the objection of Hernandez. We conclude that no manifest necessity existed for the mistrial and that Hernandez's plea should have been granted. We therefore reverse the judgment below.

Hernandez was charged jointly with his cousins, Joshua Diaz and Otman Martinez, with entering an auto to commit theft, theft by receiving, and armed robbery. The day before all three were to be tried, Diaz and Martinez accepted negotiated guilty pleas to entering an auto, theft by receiving, and a reduced charge of robbery by force in exchange for reduced sentences. An express condition of the plea was that they both testify against Hernandez. Hernandez apparently was offered the same deal but refused it.

The record shows that the crimes all occurred on one evening and, according to Diaz and Martinez, were Diaz's idea. Diaz alone entered the auto to commit the theft, after telling Hernandez to stop the car in which the three were riding. But Diaz testified that Hernandez helped carry the television set stolen from the car into Hernandez's home. After checking to see that the television set worked, the three left again.

Diaz testified that while riding around, he got the idea to rob a store. At first, the others did not want to participate in the robbery, but after Diaz made fun of them, they eventually agreed. Diaz and Martinez entered the store, and Diaz asked Hernandez to wait in the car for them. After seeing Diaz emerge from the store with cigarettes in his hand, Hernandez told Diaz he was "wrong."

Upon cross-examination of Diaz, defense counsel began exploring the deal Diaz had made with the prosecution. She questioned him about the benefits he gained by agreeing to testify against Hernandez, asking him if he knew that if he were convicted of armed robbery, he would face a possible sentence of life in prison. Proceeding with the cross-examination, the following colloquy ensued:

Q. And you also know that there was a potential that you could get ten to twenty years in prison?

A. Yes, ma'am.

Q. And you were aware that whatever you got you were going to serve every day if you got a ten to twenty years, isn't that correct?

A. Yes, ma'am.

Q. There's no parole on that, is there?

At that point, the prosecutor objected, asked to approach the bench, and requested a mistrial. He maintained that the defense could not ask about the possibility of parole, and a lengthy discussion then ensued outside the presence of the jury.

The prosecution believed the defense was attempting to create sympathy in the jury for Hernandez, whose lesser role in the crimes could now possibly result in a greater punishment than that imposed upon his accomplices. The prosecutor argued that this might cause the jury to acquit Hernandez altogether rather than have him subjected to sentencing without parole, which is mandated for armed robbery. OCGA § 17-10-6.1 (a) (2), (b), (c) (3). The prosecution insisted that case law completely prohibited any mention of parole.

The defense, on the other hand, asserted that it was not improper to question an accomplice who has negotiated a plea and is testifying against the defendant, in order to bring out the bias inherent in the witness's testimony. And in this instance, the defense argued that it sought to show that Diaz had escaped an armed robbery conviction, with its mandatory imposition of a sentence with no parole possible.

The jury was sent home for the night. The trial resumed the next morning, and the discussion continued before the jury entered the courtroom. The State argued that the defense violated OCGA § 17-8-76 and that the State therefore had an absolute right to a mistrial. Nevertheless, the State informed the court it was "okay with the Court fashioning a remedy that doesn't require a mistrial." The prosecutor simply did not know what that remedy would be.[1] The State felt it needed a mistrial to prevent the trial from being "unfair" to the citizens of Georgia. Defense counsel reiterated Hernandez's constitutional rights to confront his accusers and to receive effective assistance of counsel. She insisted she had done nothing wrong and had not violated OCGA § 17-8-76. She maintained she had a right to cross-examine anyone who testified against Hernandez to reveal any bias, interest, or motive to lie. The trial court stated that it could not think of viable alternatives and declared the mistrial.

---

[1] The State offered as a possible remedy to inform the jury of all plea negotiations, including that Hernandez had been offered the same plea bargain and had refused.

1. OCGA § 17-8-76 provides as follows:

(a) No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted by the Governor, the State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency. (b) If counsel for either side in a criminal case argues to or in the presence of the jury as provided in subsection (a) of this Code section, opposing counsel shall have the right immediately to request the court to declare a mistrial, in which case it shall be mandatory upon the court to declare a mistrial. Failure to declare a mistrial shall constitute reversible error.

Hernandez contends on appeal, as he contended below, that this Code section is clearly inapplicable to the circumstances present here and that the cross-examination of Diaz was a completely proper and constitutionally protected confrontation of an adverse witness, undertaken to demonstrate bias and motive. We agree.

(a) First, OCGA § 17-8-76 prohibits only argument that a *defendant* may not serve the full amount of his sentence; it does not prohibit even making argument in this regard concerning a *witness*. *Lemay v. State*, 264 Ga. 263, 266 (3) (443 SE2d 274) (1994).

(b) Second, in *Cave v. State*, 171 Ga. App. 22 (318 SE2d 689) (1984), the trial court denied a defense motion for a mistrial after the State asked a defense witness who was then serving a sentence whether the witness was aware that under parole policies he was almost finished with his sentence. The prosecution then argued this point in closing, as well. We held that the denial of a mistrial was not error, noting the Supreme Court's holding in *Gilreath v. State*, 247 Ga. 814, 835 (15) (279 SE2d 650) (1981), that "the purpose of the statute [(OCGA § 17-8-76)] is to prevent prosecutors from arguing in essence that the *jury* should give a more severe sentence to compensate for possible pardon, parole, or other clemency." (Citation and punctuation omitted; emphasis in original.) *Cave*, supra at 23 (1). Under current Georgia law, sentences in felony cases are imposed by the trial judge, not the jury, except in death penalty cases and cases in which a sentence of life without parole may be imposed. OCGA § 17-10-2. It follows that any remarks by the prosecuting attorney would not cause the jury to impose a more severe sentence. Such remarks, therefore, do not fall within the purview of OCGA § 17-8-76, because the jury was not authorized to impose sentence. Id.

(c) Finally, and perhaps most importantly, such cross-

examination is proper because it is constitutionally protected. *Delaware v. Van Arsdall*, 475 U. S. 673, 680 (106 SC 1431, 89 LE2d 674) (1986) (criminal defendant shows violation of confrontation clause by showing he was prohibited from engaging in otherwise appropriate cross-examination designed to show bias of witness); *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974) (partiality of witness subject to exploration at trial because Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination").

> It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness. Whether or not such a deal existed is not crucial. What counts is whether the witness may be shading his testimony in an effort to please the prosecution. A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception.

(Citations and punctuation omitted.) *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982).

Defense counsel sought to show Diaz's motive, bias, or interest in cooperating with the State and testifying against Hernandez. A crucial difference exists between this type of cross-examination and mere impeachment by showing contradictory facts or a general lack of trustworthiness because of a prior criminal conviction. The former is constitutionally protected, while the latter is not. See *Matthews v. State*, 268 Ga. 798, 802 (493 SE2d 136) (1997). A witness's bias may be exposed by showing that he has benefitted or hopes to benefit from his cooperation with the prosecution in this case. *Kinsman v. State*, 259 Ga. 89, 91 (7) (b) (376 SE2d 845) (1989).

The prosecutor's concern that revealing a sentencing differential would engender sympathy for Hernandez may well have been realistic. But any such reaction was inherent in the facts of the case. The evidence showed that Hernandez's role in the crimes was more passive than those of the other two participants. The State was responsible for the sentencing disparity by offering reduced sentencing in exchange for testimony against Hernandez. Moreover, the State did not move in limine to limit cross-examination. If genuine concerns existed, they could have been addressed by establishing proper boundaries or by carefully instructing the jury.

Here, Hernandez simply exercised his constitutional right to

confront witnesses against him by exposing their bias and motive to testify. Even when a prosecutor argues about a *defendant's* possibility of release through probation or parole, this court has upheld the denial of a motion for mistrial, finding that curative instructions sufficed. See, e.g., *Steele v. State*, 181 Ga. App. 695, 696 (1) (353 SE2d 612) (1987). Because Hernandez did not violate OCGA § 17-8-76, and because his cross-examination was relevant and constitutionally protected, a mistrial was not necessary here.

2. It follows that Hernandez's plea in bar should have been granted. A defendant has been placed in jeopardy when the jury is impaneled and sworn. Hernandez was therefore entitled to be acquitted or convicted by that jury. *Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994). If a mistrial is declared over the defendant's objection, he may be retried only if a "manifest necessity" existed for the mistrial. Id. Because we have held that the cross-examination was proper and that the prosecutor's concerns could have been alleviated short of a mistrial, no such manifest necessity existed here.

*Judgment reversed. Pope, P. J., and Miller, J., concur.*

DECIDED JULY 10, 2000.

*Monica T. Myles, Jill L. Anderson, Virginia W. Tinkler*, for appellant.

*David McDade, District Attorney, Jeffrey L. Ballew, Assistant District Attorney*, for appellee.

*Nancy J. King, James C. Bonner, Jr.*, amici curiae.