## S01G1642. THE STATE v. VOGLESON.
(571 SE2d 752)

BENHAM, Justice.

Appellee Owen Vogleson was found guilty of trafficking in cocaine.[1] A divided Court of Appeals reversed the judgment of conviction on the ground that Vogleson's Sixth Amendment right to confront the witnesses against him was abridged when his counsel was not permitted to cross-examine his co-indictee, Damon Wilson, about the scope of the deal Wilson had negotiated with the State in exchange for his testimony against appellant. *Vogleson v. State*, 250 Ga. App. 555 (1) (552 SE2d 513) (2001).[2] We granted a writ of certiorari to the Court of Appeals to address whether the Court of Appeals erred. We conclude the Court of Appeals was correct and affirm its reversal of the judgment of conviction.

In the case at bar, the jury was made aware during the State's direct examination of Wilson that Wilson had agreed to testify against Vogleson in exchange for the district attorney's recommendation that Wilson serve ten years, "a reduction in the amount of time

---

[1] Vogleson and his companion, Damon Wilson, were jointly indicted and charged with trafficking in cocaine, possession of cocaine with intent to distribute, and possession of more than one ounce of marijuana. Wilson was also indicted for possession of a firearm during the commission of a crime. The co-indictees were tried separately, with Wilson convicted at a "stipulated bench trial" of possession of cocaine with intent to distribute and possession of more than one ounce of marijuana. *Wilson v. State*, 249 Ga. App. 560 (549 SE2d 418) (2001). In a jury trial, Vogleson was found guilty of the two cocaine counts and the trial court directed a verdict of acquittal on the marijuana charge. The trial court sentenced Vogleson to 25 years' imprisonment on the trafficking conviction after determining that the cocaine possession conviction was an offense included in the trafficking conviction.

[2] Since its *Vogleson* decision, the Court of Appeals has issued similar opinions in *Perez v. State*, 254 Ga. App. 872 (564 SE2d 208) (2002), and *Green v. State*, 254 Ga. App. 881 (1) (564 SE2d 731) (2002). See also *Hernandez v. State*, 244 Ga. App. 874 (537 SE2d 149) (2000).

[he was] to receive in this case. . . ." Through defense counsel's cross-examination of Wilson, the jury learned that Wilson had agreed to plead guilty to the lesser offense, possession of cocaine with intent to distribute, and to the marijuana charge, and was not going to face the firearms charge. What the jury was not permitted to hear was Wilson's testimony about his understanding of the disparity between the sentence the State would recommend in exchange for his cooperation and the sentence he would have received without that cooperation. *Vogelson v. State*, supra, 250 Ga. App. at 560.[3]

1.

> The Sixth Amendment to the [U. S.] Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." . . . The main and essential purpose of [the right of] confrontation is to secure for the opponent the opportunity of cross-examination. . . . [A]n . . . attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." [Cit.] . . . [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [Cit.]

*Davis v. Alaska*, 415 U. S. 308, 315-317 (94 SC 1105, 39 LE2d 347) (1974). In *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982), this Court read the Supreme Court's ruling in *Davis v. Alaska* as

> guaranteeing the defendant in a criminal trial . . . the right to cross-examine a key state's witness concerning pending criminal charges against the witness. . . . "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." [Cit.] Whether or not such a deal existed is not crucial. [Cit.] What counts is

---

[3] In *Perez v. State*, supra, 254 Ga. App. at 876, Judge Ruffin, in a special concurrence described the prohibited testimony as that from which the jury could determine "whether the deal the witness struck with the [S]tate was sufficiently lucrative to render that witness's testimony less creditworthy."

whether the witness may be shading his testimony in an effort to please the prosecution.

That is not to say, however, that the Confrontation Clause of the Sixth Amendment prohibits the imposition of any limits on the cross-examiner's inquiry into the potential bias of an adverse witness. The U. S. Supreme Court made it clear in *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986), that trial judges

retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

This Court expressed a similar sentiment in *Hines*, supra, 249 Ga. at 260, when it observed that " '[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise . . . reasonable judgment in determining when the subject is exhausted. . . .' " The testimony of a witness who has made a deal with the State regarding his understanding of the disparity between the sentence he is getting for his cooperation and the sentence he would have gotten without that cooperation is objective evidence from which a jury can determine whether the witness is biased to a degree that affects credibility and is an appropriate subject of inquiry. In and of itself, such testimony is not unreasonable as a matter of harassment or prejudice, it does not tend to confuse the issues or concern the safety of the witness, or constitute interrogation that is repetitive or only marginally relevant. See *Delaware v. Van Arsdall*, supra, 475 U. S. at 679.

Defense counsel is entitled to a reasonable cross-examination on the relevant issue of whether the witness entertained any belief of personal benefit from testifying favorably for the prosecution. *Beam v. State*, 265 Ga. 853 (4) (463 SE2d 347) (1995); *Watkins v. State*, 264 Ga. 657 (1) (b) (449 SE2d 834) (1994). See also OCGA § 24-9-68, which provides that "[t]he state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury." What the witness believed concerning his deal with the prosecution is relevant since his belief reflected on his motives in testifying. *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983). See also *Shaw v. State*, 201 Ga. App. 456, 458 (411 SE2d 537) (1991), where Judge Beasley, in a special concurrence, noted that a witness's understanding of the sentence he/she was facing is relevant to the degree of bias as it shows how high the witness thought the

stakes were.

It is clear that the trial court abuses its discretion and commits error when it cuts off all inquiry on a subject on which the defense is entitled to reasonable cross-examination. *Beam v. State*, supra, 265 Ga. at 857; *Hines v. State*, supra, 249 Ga. at 260. See also *Garcia v. State*, 267 Ga. 257 (7) (477 SE2d 112) (1996). In the case at bar, the trial court informed defense counsel, "We don't talk about mandatory sentences. We don't talk about any of that stuff[,]" and then admonished counsel for ignoring the court's directive when counsel asked the witness, without referring to "mandatory sentences," about how much prison time the witness was saving himself by cooperating with the State and testifying against Vogleson. In so doing, the trial court abused its discretion. We agree with the Court of Appeals that the trial court abused its discretion when it did not permit defense counsel to question a witness who is testifying for the State in exchange for a reduction in prison time about the witness's belief concerning the amount of prison time he is avoiding by testifying against the defendant. See *Carroll v. State*, 916 SW2d 494 (9) (Tx. Cr. App. 1996); *United States v. Roan Eagle*, 867 F2d 436 (6) (8th Cir. 1989) (the right of cross-examination of a witness testifying pursuant to a plea agreement includes the range of punishment the witness is facing pursuant to the agreement and that which the witness knew he/she was facing without a deal).

We disagree with the assertion that our decision in *Hodo v. State*, 272 Ga. 272 (4) (528 SE2d 250) (2000), controls this case. In *Hodo*, we concluded that the defendant's constitutional right to confrontation was not violated when the trial court refused to permit defense counsel to question a witness for the State about the potential sentence the witness could face in light of the criminal conduct he had admitted while testifying. Defense counsel was not asking the witness about any deal he had struck with the State in exchange for his testimony, any charges pending against him, or any charges recently disposed of in conjunction with his testimony. Instead, defense counsel was asking the witness to speculate about the punishment that could be imposed upon him should the State decide to prosecute him for the criminal conduct he had admitted in his testimony.

2. The State maintains that the introduction of the witness's testimony about the sentence he would have received had he not cooperated with the prosecution injects the issue of the defendant's sentence into the guilt-innocence phase of the trial and thereby threatens our bifurcated trial system in which the jury determines guilt and the trial judge imposes sentence. In essence, the concern is that, upon being informed of what sentence(s) the dealing witness could have received, the jury will be able to discern what sentence(s)

the defendant on trial is facing and use that knowledge to fashion a verdict that will result in the sentence the jury wishes to see imposed upon the defendant being tried. See *Vogleson v. State*, supra, 250 Ga. App. at 564 (Eldridge, J., dissenting). It is important to note that this concern comes about only when the jury knows that the witness and the defendant were charged with the same crimes and that they have similar criminal histories, and the jury sees the two accomplices as equally culpable or the defendant on trial as less culpable than the accomplice who negotiated a deal.[4]

The potential for harm suggested by the State could be put to rest by a limiting instruction given the jury by the trial court prior to the receipt of the witness's testimony, much like the limiting instruction currently given prior to the admission of similar transaction evidence. Furthermore, we note that other public policy decisions more solidly based on statutes have had to yield to the criminal defendant's constitutional right to cross-examine a witness against him to show bias, motive, or contradictory testimony. See, e.g., *Mangum v. State*, 274 Ga. 573, 574 (555 SE2d 451) (2001) (restriction of cross-examination concerning a witness's status in juvenile court due to concerns about the confidentiality of juvenile offender records yields to criminal defendant's right of confrontation). Cf. *Matthews v. State*, 268 Ga. 798 (4) (493 SE2d 136) (1997) (restriction of cross-examination concerning a witness's successfully-completed first offender status must yield to a criminal defendant's constitutional right to cross-examine the witness for bias). So, too, must a series of dependent inferences springing from the statutory bifurcation of trial yield to the constitutionally-guaranteed right of confrontation. See *People v. Mumford*, 455 NW2d 51 (Mich. App. 1990) (strict adherence to rule against informing jury of defendant's possible punishment deprived defendant of opportunity to present to jury important aspect of plea bargain and thereby deprived defendant of constitutional right to confrontation).

3. Lastly, there is the question of whether the violation of Vogleson's constitutional right of confrontation was harmless error. *Delaware v. Van Arsdall*, supra, 475 U. S. at 684, 106 SC at 1438 ("constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis."). The State must show beyond a reasonable doubt that the error did not contribute to the verdict, and the test is whether the evidence may have influenced the jury. *Mangum v. State*, supra, 274 Ga. at 577. Because Wilson and

---

[4] Any jury sympathy for the defendant engendered by the revelation of the sentencing disparity has its genesis in the State's offer of reduced sentencing in exchange for testimony. See *Hernandez v. State*, supra, 244 Ga. App. at 877.

Vogleson were the only two occupants of Wilson's vehicle in which the cocaine was discovered, Wilson was the only witness who could say the cocaine belonged to Vogleson and that Vogleson had knowledge of the drug transaction planned for the cocaine. Because of the limitation on defense counsel's cross-examination of Wilson, Vogleson was not permitted " 'to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' *Davis v. Alaska*, 415 U. S. at 318." *Mangum v. State*, supra, 274 Ga. at 577. The State has not established that the limitation on the right of confrontation was harmless beyond a reasonable doubt. Id. Because we conclude that the error may well have influenced the verdict, we agree with the Court of Appeals that Vogleson is entitled to a new trial. Id.

*Judgment affirmed. All the Justices concur, except Hunstein, Carley, and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

The issue is whether the Court of Appeals erred in reversing Vogleson's conviction on the ground that Vogleson was denied his constitutional right to cross-examine his co-indictee about the mandatory minimum sentence the co-indictee faced before agreeing to testify against him. I respectfully dissent from the majority's affirmance of the judgment of the Court of Appeals because the Court of Appeals was wrong in overturning the conviction on the basis of the abridgment of Vogleson's constitutionally-protected right of confrontation.

As noted in the majority, following a jury trial, Vogleson was found guilty of trafficking in cocaine and violating the Georgia Controlled Substances Act for possession of cocaine with intent to distribute. Wilson, who was indicted for the same offenses as Vogleson plus possession of a firearm during the commission of a crime, negotiated with the State for a reduction in sentence in exchange for his testimony against Vogleson. During his direct examination, Wilson admitted that his deal with the State included the recommendation that his sentence be reduced to serving ten years in prison. The following colloquy occurred on cross-examination of Wilson:

> Vogleson's Attorney: And so you are going to plead guilty to a reduced charge of possession with intent to distribute the cocaine?
> Wilson: Yes.
> Vogleson's Attorney: But you want this jury to believe that the cocaine belonged to Mr. Vogleson?
> Wilson: That's who it belonged to. . . .
> Vogleson's Attorney: By pleading guilty to the possession

with intent to distribute you save yourself from getting a mandatory —

The Court: We don't talk about mandatory sentences. We don't talk about any of that stuff.

Vogleson's Attorney: Okay. You are saving yourself 15 years, aren't you?

The trial court then chastised Vogleson's attorney for his "complete disregard of the court's instructions," adding, "and I have asked you not to get into that. And you just disregarded what I asked." The clear consequence of this exchange was that the jury was informed that Wilson, charged with the same drug offenses as Vogleson, was going to be sentenced to serve 10 years, saving himself 15 years in prison; thus, the mandatory minimum sentence for Vogleson would be 25 years in prison. Following this, Vogleson's attorney further cross-examined Wilson about additional advantages of his deal with the State; Wilson admitted that he would not have to face the firearms charge for which he was also indicted, and Vogleson's attorney asked, "You had a lot to gain by putting it all on Owen Vogleson?" Wilson responded that he had told the whole truth and nothing but the truth throughout the course of the case.

In the face of this thorough cross-examination of Wilson regarding his potential bias as a witness, Vogleson successfully argued to the Court of Appeals that he was denied his constitutional right to explore bias. In fact, the Court of Appeals found that the jury was prevented from "considering the most important aspect of Wilson's deal – how much prison time he was avoiding by agreeing to cooperate with the State." Now a majority of this Court joins in the flawed analysis.

In the recent case of *Hodo v. State*, 272 Ga. 272 (528 SE2d 250) (2000), the defendant claimed that his constitutional right to confrontation was violated when the trial court did not permit him to question a State's witness, who was a drug dealer, about the potential sentence he could face because of criminal conduct the witness had admitted on the stand. Id. at 274 (4). This Court unanimously determined that Hodo was allowed to amply explore the witness's potential for bias or partiality, and that "[t]he mere fact that Hodo was unable to ask [the witness] to conjecture about possible punishment did not diminish Hodo's attempt to show [the witness's] motive for testifying on behalf of the State." Id.

Now the majority, as did the Court of Appeals, seeks to distinguish *Hodo* on the bases that there the drug dealer witness was not involved in the crimes being tried and had not been charged with any crime, and consequently, that requiring such a witness to speculate about possible punishment for crimes with which he might be

charged differed from requiring an accomplice to reveal the punishment he would receive but for the accomplice's deal with the State. But these are distinctions without a difference because the abiding legal principles in *Hodo* and in this case are the same.

There is no dispute that a defendant's right to cross-examine a witness in order to explore the witness's potential bias or partiality is of great importance. *Davis v. Alaska,* 415 U. S. 308, 316-317 (2) (94 SC 1105, 39 LE2d 347) (1974). However, the Confrontation Clause of the Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall,* 475 U. S. 673, 679 (2) (106 SC 1431, 89 LE2d 674) (1986), quoting *Delaware v. Fensterer,* 474 U. S. 15, 20 (106 SC 292, 88 LE2d 15) (1985) (per curiam) (emphasis in original).

A trial court's discretion in limiting the scope of cross-examination is broad. *Allen v. State,* 275 Ga. 64, 68 (3) (561 SE2d 397) (2002). And the exercise of the court's discretion is not a cause for reversal of a defendant's conviction unless there is an abuse of that discretion. *Bromley v. State,* 259 Ga. 377, 382 (7) (380 SE2d 694) (1989); *Chastain v. State,* 257 Ga. 54, 55 (354 SE2d 421) (1987). In *Hines v. State,* 249 Ga. 257, 260 (2) (290 SE2d 911) (1982), this Court determined that an abuse of discretion exists in the limitation of a defendant's cross-examination when a trial court cuts off *all* inquiry on a subject with respect to which the defense is entitled to a reasonable cross-examination. In that case, the trial court granted the prosecution's motion to prohibit defense counsel from cross-examining a crucial State's witness about separate criminal charges pending against the witness, and whether the witness assumed that he would receive some benefit by testifying favorably for the State. Id. at 258. As this Court observed in regard to exposing the witness's motivation in testifying, "What counts is whether the witness may be shading his testimony in an effort to please the prosecution." Id. at 260 (2); *Greene v. Wainwright,* 634 F2d 272, 276 (5th Cir. 1981). See also *Isaac v. State,* 269 Ga. 875, 876 (2) (505 SE2d 480) (1998); *Owens v. State,* 251 Ga. 313, 314 (1) (305 SE2d 102) (1983).

Here, the trial court certainly did not bar Vogleson from inquiry about the accomplice witness's possible motivation for giving testimony favorable to the State. The trial court permitted Vogleson to elicit from the witness not only that he had made a deal with the State, but also the beneficial details of the deal, that is, the witness would plead guilty to a lesser drug charge, would not have to face the firearms possession charge for which he had also been indicted, and would receive the obviously more favorable sentence of ten years in prison. Thus, the jury learned that the witness believed that he stood to gain the advantage of more lenient punishment from his coopera-

tion with the State. The majority's finding that this information was insufficient so as to constitute a violation of constitutional magnitude is a liberal departure from precedent of this Court.

So too, is it at odds with decisions of the Eleventh Circuit Court of Appeals, which has repeatedly held that in the situation in which the accused seeks to cross-examine a key government witness, a trial judge may limit such cross-examination without infringing the defendant's Sixth Amendment rights where,

> (1) the jury, through the cross-examination permitted, was exposed to facts sufficient for it to draw inferences relating to the reliability of the witness; and, (2) the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the witness might have been biased.

*United States v. Calle*, 822 F2d 1016, 1020 (1987). See also *United States v. Burke,* 738 F2d 1225, 1227-1228 (11th Cir. 1984) (no sixth amendment violation when sufficient information is elicited from witness from which jury can adequately gauge credibility and assess possible motive or bias); *United States v. Haimowitz,* 706 F2d 1549, 1559 (11th Cir. 1983) (no abuse of discretion where defendant had opportunity to expose facts from which jury could draw fair inferences regarding credibility of witness), cert. denied, 464 U. S. 1069 (104 SC 974, 79 LE2d 212) (1984). Other federal appeals courts have similarly held that in limiting cross-examination, a trial court abuses its discretion "only if the jury is left without 'sufficient information concerning formative events to make a "discriminating appraisal" of a witness's motives and bias.'" *United States v. Mulinelli-Navas*, 111 F3d 983, 987 (1st Cir. 1997), quoting *United States v. Twomey,* 806 F2d 1136, 1140 (1st Cir. 1986) and *United States v. Campbell,* 426 F2d 547, 550 (2nd Cir. 1970).

Certainly, in this case Vogleson put ample information about Wilson before the jury so as to enable Vogleson to attempt to discredit Wilson's testimony. The trial court's restriction was solely in regard to Vogleson's exploration of the witness's possible sentence had the witness not made a deal with the State in exchange for his testimony. This was the trial court's proper recognition of the legal principle, long-embodied in state statutes and case law, that the jury is to disregard any consideration of punishment in its deliberation of a defendant's guilt or innocence. See, e.g., OCGA §§ 17-10-1; 17-10-2; *Bellamy v. State*, 272 Ga. 157, 159 (4) (527 SE2d 867) (2000); *Smith v. State*, 268 Ga. 42 (2) (485 SE2d 189) (1997); *Harris v. State*, 234 Ga. 871, 873 (218 SE2d 583) (1975).

In this case, the witness, Wilson, was an accomplice, indicted for

the same drug offenses as Vogleson, and thus, subject to the same punishments for those offenses. Consequently, evidence of the mandatory minimum sentence the accomplice sought to avoid would inform the jury about the specific sentence Vogleson would receive if the jury returned a verdict of guilty. It is up to the trial court to ensure the fair determination of the defendant's guilt or innocence of each charge. *Terry v. State*, 259 Ga. 165, 168 (1) (377 SE2d 837) (1989); *Moss v. State*, 245 Ga. App. 811, 813 (2) (538 SE2d 876) (2000). The majority allows the criminal defendant, by his unfettered cross-examination, to compromise the jury's neutrality on the question of punishment during its consideration of the defendant's guilt or innocence. The inherent danger of such a practice has been recognized by other states as well. See *State v. Branning*, 271 Kan. 877 (26 P3d 673) (2001) (trial court properly precluded murder defendant from cross-examining co-defendant concerning possible sentencing range under plea agreement because it would have allowed jury to infer what defendant's sentence might be); *State v. Greenleaf*, 591 NW2d 488 (Minn. 1999) (trial court was properly concerned that recitation of number of months of confinement accomplice could serve might mislead the jury, and trial court properly prevented the jury from speculating about possible sentences).

Also, the theory underlying the majority analysis is problematic; the majority provides no support, empirical or otherwise, for the premise that there is a correlation between the degree of a witness's truthfulness or credibility and the amount of punishment the witness seeks to avoid. As has already been noted, what is critical to a defendant's cross-examination of a State's witness is the ability to expose the witness's motivation for testifying, that is, whether the witness has reason to "[shade] his testimony in an effort to please the prosecution." *Hines v. State*, supra at 260 (2). A jury need not know exactly how much prison time the witness may be avoiding by cooperating with the State to be able to accurately discern that the witness's testimony may be self-serving, and thus, less than truthful. To hold otherwise brings into question whether the jury must also be informed of the witness's possibilities for credit for "good time," probation, pardon and/or parole, insofar as the prosecutor may have any involvement in such matters. It is a slippery slope.

I depart from the majority for yet another reason. The alleged violation of the Confrontation Clause is subject to a harmless error analysis. See *Delaware v. Van Arsdall*, supra; *Davis v. State*, 272 Ga. 327, 330 (6) (528 SE2d 800) (2000). Even if the limitation of Vogleson's cross-examination was found to be a constitutional violation, it would have to be deemed harmless under the facts of this case. The jury was made well aware, albeit by the insistence and assistance of defense counsel, of the mandatory minimum sentence

faced by the witness. Vogleson's conviction should stand.

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

DECIDED OCTOBER 28, 2002.

*J. Tom Morgan, District Attorney, Jennifer M. Daniels, Robert M. Coker, Assistant District Attorneys,* for appellant.
*Sara Martha T. Yeager, Ruth L. Rocker,* for appellee.