## A09A1143. CLINE v. THE STATE.
(685 SE2d 501)

DOYLE, Judge.

Following a jury trial, James Cline appeals his conviction of aggravated sexual battery[1] and cruelty to children,[2] contending that (1) the trial court erroneously granted the State's motion in limine regarding a State's witness's first-offender guilty plea to a drug offense; (2) the court erred in admitting evidence of three similar transactions involving Cline's prior sexual abuse of underage girls; (3) the court erred in denying his motion for new trial based on a claim of ineffective assistance of counsel; and (4) the evidence was insufficient to support the guilty verdict as to the cruelty to children offense. For the reasons that follow, we affirm.

Construed in favor of the verdict,[3] the evidence shows that Cline's daughter, a 16-year-old who lived with her mother, was scheduled to stay with Cline while the mother was out of town. When the daughter arrived at Cline's residence after being out with her boyfriend, Cline was asleep in the only bed available. Cline woke up and allowed the daughter to sleep in his bed while he prepared a temporary bed for himself on the floor. The daughter was later awakened by Cline lying in the bed next to her and touching her

---

[1] OCGA § 16-6-22.2 (b).

[2] OCGA § 16-5-70 (b).

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

vagina. The daughter immediately got out of the bed and fled the residence as Cline pursued her, telling her he did not mean to touch her and pleading for her to stay. The daughter drove to her boyfriend's house as Cline followed in his own vehicle. Cline followed her into the boyfriend's house, apologizing and saying "I did it. I did a terrible thing. I wish I could cut my arm off. I wish I could cut my hand off. I hurt her." Cline eventually left, and the daughter stayed at the boyfriend's house after calling her mother. The next day, at the daughter's request, the mother took her to the police department to file a report.

Cline was charged with committing aggravated sexual battery and cruelty to children, and following a trial, a jury found him guilty of both counts. Cline unsuccessfully moved for a new trial on ineffective assistance grounds; he now appeals.

1. Prior to trial, the trial court granted the State's motion in limine to prevent Cline from referring to a first-offender guilty plea entered into by the boyfriend for a violation of the Georgia Controlled Substances Act. Cline asserts that this was reversible error; we disagree.

Cline relies primarily on *State v. Vogleson*,[4] and argues that the trial court's ruling impermissibly limited his ability to cross-examine the boyfriend about any bias or improper motive he had for testifying. However, Cline's reliance on *Vogleson* is misplaced because that case addressed the cross-examination of a co-indictee about the scope of the deal the co-indictee had negotiated with the State in exchange for his testimony against the appellant.[5] In that scenario, the Supreme Court of Georgia held that

> the trial court abused its discretion when it did not permit defense counsel to question a witness who is testifying for the State in exchange for a reduction in prison time about the witness's belief concerning the amount of prison time he is avoiding by testifying against the defendant.[6]

Here, by contrast, Cline concedes that "there was no evidence of a deal between the prosecution and [the boyfriend] for his testimony." The boyfriend was not a co-indictee, and the drug offense, which had no relevance to the offenses at issue in Cline's trial, had already been fully resolved in a first-offender guilty plea prior to Cline's trial. The boyfriend's drug offense and arrest occurred after

---

[4] 275 Ga. 637 (571 SE2d 752) (2002).
[5] See id. at 637-638.
[6] Id. at 640 (1).

he had already given a statement to police about the evening's events, so the disposition of the drug offense could not have served as a motive for aiding police in their investigation.

Further, as the trial court correctly ruled,

> [t]he first offender record of one who is currently serving a first offender sentence . . . may not be used to impeach the first offender on general credibility grounds (i.e., by establishing that the first offender has been convicted of a felony or crime of moral turpitude) because no adjudication of guilt has been entered.[7]

The trial court's ruling was restricted solely to mention of the witness's arrest or guilty plea for the drug offense, and it would not have prevented Cline from otherwise cross-examining the witness regarding potential bias.

To the extent that Cline now argues that some other aspect of the boyfriend's first-offender sentence might have demonstrated bias or improper motive in his testimony, the trial transcript reveals that he did not pursue this argument in the trial court. The transcript contains no argument on Cline's part suggesting any connection between the boyfriend's first-offender obligations and his testimony at trial. Instead, Cline's argument before the trial court focused on the fact that, depending on how the evidence bore out, the drug offense guilty plea might be used to disprove or contradict relevant facts testified to by the witness — a point conceded by the State at trial and agreed with by the trial court. Cline otherwise acquiesced in the trial court's ruling, and this deprives him of the right to challenge it on appeal. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal."[8] Therefore, under the facts in the record before us, we discern no reversible error.

2. Cline next challenges the trial court's ruling with respect to the admissibility of testimony from three similar transaction witnesses describing prior sexual abuse by Cline during their childhood. The State offered the evidence to show Cline's course of conduct or bent of mind to sexually assault young girls, and after a hearing, the

---

[7] *Smith v. State*, 276 Ga. 263, 264 (2) (577 SE2d 548) (2003).

[8] (Punctuation omitted.) *Payne v. State*, 273 Ga. App. 483, 485-486 (3) (615 SE2d 564) (2005). See *Harris v. State*, 190 Ga. App. 343, 348 (4) (b) (378 SE2d 912) (1989) ("It is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver.") (punctuation omitted).

trial court allowed the evidence.[9] "The decision of a trial court to admit evidence of similar transactions will be upheld unless clearly erroneous,"[10] and we discern no such error here.

(a) *Similarity of testimony from A. A.* Cline first challenges the testimony of a prior victim, A. A., Cline's niece, on the ground that the abuse of A. A. was not sufficiently similar to the offense for which he was tried. A. A. testified that when she was between six and eight years old, Cline approached her and made her hold his penis. Cline argues that the nature of this behavior was "completely dissimilar" from that he was convicted of here, fondling his 16-year-old daughter's genitalia. However, when used for the purpose of establishing Cline's lustful disposition toward young female family members, we discern no clear error in the trial court's conclusion that the two acts were sufficiently similar: both involved young female family members, and both involved inappropriate, sexual touching for Cline's sexual gratification.

> In cases of sexual abuse of children, evidence of prior sexual acts performed on other children is admissible to show the lustful disposition of the defendant toward children, and, because there is seldom a competent witness other than the victim to what occurred, to corroborate testimony of the victim as to the acts charged.[11]

With respect to the age difference between A. A. and the victim here, "[n]o Georgia case holds that the difference in age of the victims is alone determinative of similarity. Our precedent consistently holds that it is the totality of the similar facts surrounding the crimes which are properly considered in a similar transaction analysis."[12] Accordingly, we discern no error in the trial court's admission of A. A.'s similar transaction testimony.

(b) *Undue prejudicial effect of testimony from A. A., S. N., and T. T.* Cline contends that the testimony of all three similar transaction witnesses was improper because the testimony's probative value was outweighed by the prejudicial effect. With respect to A. A., Cline focuses on the remoteness in time of the similar transaction, which occurred approximately 20 years prior to the acts at issue here.

---

[9] See, e.g., *Head v. State*, 276 Ga. 131, 135 (5) (575 SE2d 883) (2003) (similar transaction evidence is admissible to establish a peculiar course of conduct or bent of mind).

[10] *Hinton v. State*, 280 Ga. 811, 817 (6) (631 SE2d 365) (2006).

[11] (Punctuation omitted.) *Mikell v. State*, 281 Ga. App. 739, 742-743 (2) (637 SE2d 142) (2006) (finding sufficient similarity between prior sexual abuse of eight-year-old, twelve-year-old, and fifteen-year-old during trial for abuse of six-year-old).

[12] *Payne v. State*, 285 Ga. 137, 139 (674 SE2d 298) (2009).

However, "[t]he lapse of time generally goes to the weight and credibility of the evidence, not to its admissibility. This is especially true where the accused spent part of the interval incarcerated,"[13] as Cline did here for nearly eight years. Therefore, we discern no clear error based on the remoteness of that prior similar transaction.[14]

The same is true of the other two similar transaction witnesses, S. N. and T. T. With respect to S. N., a childhood neighbor next door to Cline and his daughter, she testified that Cline touched her vagina when she was eight years old, approximately eight years prior to the offenses here. T. T., a childhood friend of Cline's daughter, testified that Cline touched her breasts and vagina when she was approximately eight or nine years old. We do not find that the prior abuses, which took place between eight and fourteen years prior to the offenses here, to be so remote as to have rendered them inadmissible, and the nature of the prior abuse was sufficiently similar to be admissible as similar transaction evidence in this case.

> [G]iven that the similar transaction rule has been most liberally extended in the area of sexual offenses, and because the prior transaction[s] in this case tend[ ] to shed light on what would arouse [Cline's] sexual desire, we conclude that the evidence here was admissible and that its probative value outweighed any prejudicial impact.[15]

3. Cline contends that he received ineffective assistance of counsel because his trial counsel (a) failed to timely move for a mistrial following an impermissible reference by the State to Cline's prior child molestation conviction, and (b) failed to request a jury instruction on the State's failure to preserve evidence. Neither ground presents a basis for a new trial.

To succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient perfor-

---

[13] (Citations and punctuation omitted.) *Hinton*, 280 Ga. at 817-818 (6) (holding that an interval of 17 years was not so great as to require exclusion of similar transaction evidence).

[14] See *Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991) (holding that 31 years is too remote but noting that "[w]here similar transaction evidence has been admissible otherwise, lapses of time of 11 years (*Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985)) and of 19 years (*Cooper v. State*, 173 Ga. App. 254, 255 (325 SE2d 877) (1985)) have not demanded that the evidence was inadmissible") (punctuation omitted); *Delk v. State*, 274 Ga. App. 261, 262-263 (2) (619 SE2d 310) (2005) (allowing evidence of child molestation occurring 25 years earlier).

[15] *Barrett v. State*, 253 Ga. App. 357, 359 (1) (559 SE2d 108) (2002).

mance.[16] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[17] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[18] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[19]

(a) *Failure to timely move for a mistrial*. Following the testimony of the three similar transaction witnesses, the State tendered Cline's 1993 conviction of child molestation arising from his abuse of S. N. and T. T. Cline objected to the admission of the conviction, and the trial court sustained his objection. Following the testimony of the next witness (approximately 15 minutes after Cline's successful objection), Cline moved for a mistrial on the ground that the State's reference to the conviction improperly prejudiced the jury. The trial court denied the motion as untimely[20] and Cline now contends that his trial counsel was ineffective for failing to make the motion in a timely manner.

Pretermitting whether the failure to timely move for a mistrial was deficient performance, we hold that Cline has failed to meet his burden of showing that the State's passing reference to his prior conviction for child molestation created a reasonable probability that the trial outcome would have been different absent the reference. At the hearing on Cline's motion for new trial, the trial court stated that it would not have granted a timely motion, although it did during trial offer to give a curative instruction, which Cline declined, and the trial court had already instructed the jury to disregard evidence ruled inadmissible. The conviction referred to by the State was for the same molestation that had just been described in graphic detail

---

[16] See *Strickland v. Washington,* 466 U. S. 668, 687-688, 694 (III) (A)-(B) (104 SC 2052, 80 LE2d 674) (1984).

[17] (Citation and punctuation omitted.) *Williams v. State,* 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[18] See *Strickland,* supra, 466 U. S. at 697 (IV); *Fuller v. State,* 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[19] (Punctuation omitted.) *Robinson v. State,* 277 Ga. 75, 76 (586 SE2d 313) (2003).

[20] See, e.g., *Kim v. State,* 298 Ga. App. 402, 403 (1) (680 SE2d 469) (2009) ("after a trial court has issued a curative instruction, failure by the defendant to timely renew his motion for mistrial waives any error in the denial of that motion. The renewal must occur immediately; it is not timely if it comes at the close of all the evidence, at the close of the State's evidence, or following the completion of the witness's testimony and that of a subsequent witness") (citations and punctuation omitted); *McKee v. State,* 258 Ga. App. 99, 101 (3) (572 SE2d 740) (2002) ("[a] motion for mistrial which is not made at the time the question[ ] objected to [is] answered is not timely").

during live trial testimony by the victims of the crimes in the prior conviction. The jury had already been exposed to these descriptions by the victims when the State made a single passing reference to the fact that Cline had been convicted of child molestation for those acts. Based on this record, the denial of a mistrial would not have been reversible error,[21] and we conclude that the reference to Cline's conviction was cumulative of the live testimony by the victims who had already described to the jury the prior sexual abuse by Cline. Therefore, trial counsel's failure to timely move for a mistrial does not support Cline's claim of ineffective assistance of counsel.

(b) *Failure to request a jury instruction on preservation of evidence.* At the motion for new trial hearing, Cline argued that his trial counsel should have requested a jury charge addressing the State's failure to preserve the daughter's pajamas. Cline argued that, because the trial evidence showed that on the night of the offense Cline's hand had been cut earlier and was bleeding, there would have been blood left on the daughter's pajamas if he had touched her. Although there was no allegation of bad faith on the part of the State or police for failing to secure the daughter's pajamas, Cline argued that his trial counsel should have requested the following jury instruction, based on OCGA § 24-4-22:

> If you find that a party has evidence in its power which is available and material but not provided, you may infer that such evidence would be detrimental to that party's position. Whether any such evidence exists, whether it is available, whether a party has intentionally failed to produce it, and whether or not you draw any such inferences are all issues for the jury to decide.

At the motion for new trial hearing, the trial court explained that it would not have given the charge had it been requested. Indeed, "[t]his [C]ourt and the Supreme Court have repeatedly held that [a spoliation charge based on OCGA § 24-4-22] is not appropriate in a criminal case."[22] Therefore, as this request would have been meritless, it cannot support a claim of ineffective assistance of counsel.[23]

---

[21] See *Vasser v. State*, 273 Ga. 747, 751 (4) (545 SE2d 906) (2001) (no reversible error in denial of mistrial in light of cumulative nature of improper testimony and prior instruction to disregard evidence ruled inadmissible).

[22] *Doyal v. State*, 287 Ga. App. 667, 672 (7) (653 SE2d 52) (2007).

[23] See *Carter v. State*, 266 Ga. App. 831, 832 (598 SE2d 122) (2004) ("Failure to make a meritless objection cannot be evidence of ineffective assistance of counsel.") (punctuation omitted).

4. Finally, Cline challenges the sufficiency of the evidence with respect to the conviction for cruelty to children, as defined by OCGA § 16-5-70 (b): "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." Specifically, Cline argues that there was insufficient evidence that his daughter suffered cruel or excessive mental pain. We disagree.

The standard of review for sufficiency of the evidence [in a criminal case] is set out in *Jackson v. Virginia*.[24]

> The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[25]

With respect to cruelty to children, "[w]hat constitutes cruel or excessive physical or mental pain must be resolved by a jury."[26]

> "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this instance, mental rather than physical pain). There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. On the pole with which we are concerned here (and will be whenever there is an appeal from a conviction), there will be instances where the law would not countenance a finding of cruel or excessive pain. We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.[27]

---

[24] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[25] (Punctuation omitted.) *Taylor v. State*, 266 Ga. App. 818 (598 SE2d 122) (2004).

[26] *Alford v. State*, 243 Ga. App. 212, 214 (3) (534 SE2d 81) (2000).

[27] (Footnotes omitted.) *Sims v. State*, 234 Ga. App. 678, 679-680 (1) (a) (507 SE2d 845) (1998).

Here, there was evidence that after Cline inappropriately touched his daughter in bed, she fled to her boyfriend's house where she "couldn't talk" and was "shaking" and "hysterically crying." The daughter described her state of mind as "shocked." She had not spoken to her father since the incident, and for months after the incident, when the daughter began speaking about the incident (which was rare), she began shaking. In light of the facts presented, the jury was authorized to find that Cline caused his daughter cruel or excessive mental pain.[28]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED OCTOBER 27, 2009.

*Richard A. Jones*, for appellant.
*Garry T. Moss, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney*, for appellee.

---

[28] See *Barber v. State*, 283 Ga. App. 129, 130 (2) (640 SE2d 696) (2006) (sufficient evidence of child molestation where victim was upset and fearful and cried repeatedly upon recounting the incident).