IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31611-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADRIAN SUTLEJ SAMALIA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Adrian Samalia appeals his conviction for first degree robbery, arguing that the evidence was insufficient and that several errors deprived him of a fair trial. Concluding the evidence was sufficient, and the trial court properly dealt with the other issues, we affirm.

## FACTS

This case has its genesis in the theft of packages from a United Parcel Service (UPS) truck parked in an alley in Yakima on December 9, 2011. A delivery driver left the door to the storage area of his truck open while he went inside a business to pick up some packages. When the driver returned, he saw two males inside the truck; each ran off with a package when they heard him speak out.

The men fled down the alley with the driver and the business owner in pursuit. The second man dropped his package and pulled out a gun. He pointed it at the business owner and both pursuers stopped. The two men got into a vehicle and left. The business owner reported the license plate of the vehicle.

Officer Tarin Miller located and stopped the vehicle. A passenger in the backseat fled; the officer pursued until the suspect discarded a gun. The officer then secured the weapon and called in the fleeing suspect's direction to other responding officers. A dog tracked the suspect to a carport where the police arrested Mr. Samalia. While Officer Miller pursued Samalia, the car fled. Police located it later that night. A search of the vehicle revealed Mr. Samalia's identification card in the back seat.

Mr. Samalia was charged with first degree robbery as both a principal and as an accomplice.[1] Also charged with first degree robbery were Travis Cliett and Stacey Melton. Mr. Cliett was identified as the first robber who got away with the package, while Ms. Melton, the owner of the vehicle used in the escape, was accused of being the get-away driver. Mr. Cliett's case was tried separately.[2] In exchange for her agreement to testify, Ms. Melton was allowed to plead guilty to a gross misdemeanor offense of

---

[1] Mr. Samalia was also charged with unlawful possession of a firearm out of the incident. That charged was heard by the bench. Mr. Samalia was acquitted.

[2] Mr. Cliett was convicted of the robbery and other charges. His appeal is pending in this court. *See* Court of Appeals no. 32253-0-III.

2

rendering criminal assistance. The prosecutor would recommend that she be sentenced to the 22 days she had already served in custody.

The matter proceeded to jury trial in the Yakima County Courthouse, a building that generally closes at 4:00 p.m. Mr. Samalia's trial ran later than 4:00 p.m. on at least three occasions. On those days, the court had security keep the doors to the courthouse unlocked. However, the sign by the front door and the court's website both still indicated the court closed at 4:00 p.m.

Issues in this appeal arise from the trial testimony of two of the witnesses. Officer Chris Taylor testified that he searched the Melton vehicle at the police garage and found Mr. Samalia's identification card in a wallet in the back seat. Defense counsel cross-examined Officer Taylor at length on the fact that he had not observed the vehicle prior to the search. Counsel then got the officer to admit that he "assumed" Mr. Samalia had left the identification in the car. A series of questions ensued which confirmed that the officer did not know when the wallet had been placed in the car. Counsel then asked the officer if he only assumed that Mr. Samalia left the wallet in the car because it advanced the State's case. The court sustained the prosecutor's objection to the question. Counsel then asked why the officer would assume it. The officer answered:

> Because another officer stopped that car. Saw Mr. Samalia run from it. He was detained shortly thereafter in a very immediate proximity to where the car was. Based on my training experience I know these officers aren't lying.

3 Tr. of Proceedings (TP) at 333.

3

Defense counsel objected to the answer and the court struck the final sentence. TP at 334. However, unchastened by the experience, counsel then confirmed that the officer was familiar with the rules about testifying before stating "you're willing to break those rules if you think it will help get a conviction." TP at 334. The court sustained an objection and counsel ended his cross-examination.

Ms. Melton later testified to her involvement in the day's activities. She stated that Cliett and Samalia had run to her car. Cliett carried a package and Samalia sat in the back seat. Samilia fled when the officer stopped the vehicle. Defense counsel began his cross-examination by getting Ms. Melton to admit that she initially had lied to the police concerning her car and being with Mr. Samalia that day. Counsel had her confirm that she originally had been charged with first degree robbery and asked her what the penalties were for that crime. TP at 393. An objection was raised and the jury was excused.

During the ensuing argument, defense counsel insisted that he was permitted to question the witness concerning the fact that the robbery charge carried a maximum sentence of life in prison. The court believed it would be prejudicial for the jury to know that fact. The court indicated that counsel could examine the witness about how she faced substantially less punishment for the rendering offense. Counsel then got Ms. Melton to agree that her expected punishment was much less significant than the robbery punishment would have been, "almost infinitesimal by comparison." TP at 433. She also

4

agreed that she received an "incredible benefit" for her testimony. TP at 434. She told

jurors that the new charge was a gross misdemeanor offense and that she would only

receive the "twenty-something" days she had already served. TP at 437.

The court instructed the jury on accomplice liability. The court rejected two

defense instructional requests that would have amended the "intent" and "use of force"

instructions. The defense argued the case to the jury that the State had not shown that a

robbery occurred or that his client was involved. Nonetheless, the jury found Mr.

Samalia guilty of first degree robbery.

Immediately after the verdict was read, the defense sought a new trial on the basis

of Officer Taylor's testimony and the prosecutor's use in closing argument of one

PowerPoint slide stating that the defendant was "GUILTY." The court denied the

motion, reasoning that its actions in striking the challenged testimony was sufficient and

that the slide did not amount to misconduct.

The court ultimately imposed a standard range sentence. Mr. Samalia timely

appealed to this court.

## ANALYSIS

Mr. Samalia raises six challenges. We first consider his evidentiary sufficiency

challenge. We then address whether the jury was instructed properly, whether cross-

examination of Ms. Melton was unduly restricted, whether the court erred in denying the

motion for a new trial, and whether the courtroom was erroneously closed to the public.

5

No. 31611-4-III
*State v. Samalia*

In light of our conclusion that there were not multiple errors, we do not address the cumulative error claim.

*Evidentiary Sufficiency*

Mr. Samalia argues that there was insufficient evidence of robbery for two reasons—he had already dropped his package before pulling out the gun and there was no evidence that he knew Cliett had retained his package. Properly viewed, the evidence did support the jury's determination.

Well settled standards govern our review of this issue. Evidence is sufficient to support a verdict if the trier of fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221.

"A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190. This statute reflects a transactional view of the crime rather than the former common law standard that force used during a robbery needed to be contemporaneous with the taking. *State v. Handburgh*, 119 Wn.2d 284, 830 P.2d 641 (1992). Under the transactional view, a taking

6

can occur outside the presence of the victim, and the necessary force to constitute robbery can be found in the forceful retention of stolen property that was peaceably taken. *Id.* Washington's robbery statute simply requires that the force be used either to obtain or retain property, or to overcome resistance to the taking. *State v. Johnson*, 155 Wn.2d 609, 611, 121 P.3d 91 (2005).

To convict Mr. Samalia on a theory of accomplice liability, the State had to prove that (1) "With knowledge that it will promote or facilitate the commission of the crime" he (2) "Aids . . . such other person in planning or committing it." RCW 9A.08.020. The knowledge requirement is general knowledge of the crime: "'Specific knowledge of *the elements* of the coparticipant's crime need not be proved to convict one as an accomplice.'" *State v. Roberts*, 142 Wn.2d 471, 512, 14 P.3d 713 (2000) (quoting *State v. Rice*, 102 Wn.2d 120, 125, 683 P.2d 199 (1984)). Because of this, the person must be generally aware of the type of crime charged, but not necessarily the degree of it. *In re Pers. Restraint of Sarausad*, 109 Wn. App. 824, 836, 39 P.3d 308 (2001). Where the elements of a crime are split between accomplices, all of the participants are guilty of the crime. *See State v. Haack*, 88 Wn. App. 423, 427-428, 958 P.2d 1001 (1997).

Mr. Samalia first argues that because he abandoned his purloined property before pulling a weapon, he was not guilty of robbery under *Johnson*. While his view of *Johnson* is factually accurate, it does not aid him here. In *Johnson*, a man stole items from a store, but abandoned them when chased by a security guard. He then used force

7

to escape from the guard. 155 Wn.2d at 610. The court ruled that force used after abandonment of property is not force used to take or retain property under the terms of the statute. *Id.* at 611. *Johnson* did not involve an accomplice. Because Mr. Cliett retained his stolen package after Mr. Samalia pulled a gun on the pursuers, the evidence supported the view that Mr. Samalia was guilty as an accomplice to that taking.

To counter this argument, Mr. Samalia contends that the evidence was insufficient to show that he aided Mr. Cliett because he did not know Cliett had retained the property since they were out of sight of each other. The facts, however, supported a contrary view of the evidence. The business owner testified that the two men ran off on the same side of the truck with one a little ahead of the other. There was no evidence that Cliett dropped his package or that Samalia had any reason to believe he did. Further, Ms. Melton testified that Cliett had a package with him when the two men returned to her car. A jury could infer from this testimony that Mr. Samalia knew that Mr. Cliett still retained his package when he pulled out his gun. There was no reason for him to believe otherwise.

Properly viewed, the evidence supported the jury's verdict. It was sufficient.

*Jury Instructions*

Mr. Samalia argues that the court erred by failing to give his two requested instructions, resulting in the court's instructions misstating the law. The court's

8

instructions were proper and allowed the defense to argue its theory of the case. There was no error.

Long settled standards also govern this argument. Jury instructions are sufficient if they correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The elements instruction accurately stated the law of robbery. It read:

> To convict the defendant of the crime of First Degree Robbery, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about December 9, 2011, the defendant or an accomplice unlawfully took personal property of Vernon Place and/or UPS in the presence of Vernon Place;
> (2) That the defendant or an accomplice intended to commit theft of the property;
> (3) That the taking was against Vernon Place's will by the defendant or an accomplice's use or threatened use of immediate force, violence or fear of injury to that person;
> (4) That force or fear was used by the defendant or an accomplice to obtain or retain possession of the property or to prevent or overcome resistance to the taking;
> (5) That in the commission of these acts or in immediate flight therefrom the defendant or an accomplice
>     (a) was armed with a deadly weapon; or

> (b) displayed what appeared to be a firearm or other deadly weapon; and
> (6) That the acts occurred in the State of Washington.

Clerk's Papers (CP) at 89. The above instruction mirrors the robbery statutes. *Cf.* RCW 9A.56.190 and RCW 9A.56.200.[3]

This instruction also allowed Mr. Samalia to argue his theory of the case that because he abandoned the property prior to pulling out the gun he did not commit robbery. The instruction's fourth element requires that "force or fear was used . . . to *obtain or retain possession of the property* or to prevent or overcome resistance to the taking." CP at 89 (emphasis added). Mr. Samalia was free to use this language to argue that because he had dropped the box, he was not using force to "retain possession of the property." *Id.* In fact, defense counsel made this argument in closing. TP at 621.

Mr. Samalia also proposed an additional instruction that read:

> The force used must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance "to the taking." *Force used merely in an attempt to escape after abandoning the property is not a robbery.*

CP at 72 (emphasis added). The trial court rejected this instruction because the final sentence could confuse the jury. Specifically, the court believed that due to the accomplice instruction, the proposed last sentence on abandonment would cause

---

[3] Element two contains the nonstatutory element of intent to commit theft. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005) (robbery includes the nonstatutory element of specific intent to steal).

confusion. Because Mr. Samalia was still able to argue his theory of the case absent this instruction, the instructions were sufficient and the trial court did not abuse its discretion.

Mr. Samalia's next argument is that the accomplice liability instruction was improper because it would allow the jury to convict him even if he only had the intent to commit theft. For accomplice liability, the person must have knowledge that his or her conduct will aid in the commission of *the* crime. RCW 9A.08.020(3); *State v. Roberts*, 142 Wn.2d at 513. In this case, the accomplice liability instruction stated in relevant part:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime of First Degree Robbery, he either:
>
> (1) Solicits, commands, encourages, or requests another person to commit the crime; or
> (2) Aids or agrees to aid another person in planning or committing the crime.

CP at 82. This instruction also mirrors the accomplice liability statute. *See* RCW 9A.08.020(3). It accurately stated the law of accomplice liability.

Mr. Samalia argues that this instruction and the to-convict instruction allowed the jury to convict a person of robbery even if he only intended to commit theft. He compares this situation with *State v. Grendahl*, 110 Wn. App. 905, 908, 43 P.3d 76 (2002). The comparison fails because of a critical factual difference between the two cases.

11

In *Grendahl* this court concluded that identical jury instructions were erroneous because the defendant, who was driving the get-away car while an accomplice was stealing a woman's unattended purse, was unaware of the fact that the accomplice actually used force to accomplish the theft, thereby elevating the crime to robbery. *Id.* at 906-910. Since the two defendants did not share the same intent, the instructions were erroneous as to Mr. Grendahl who had agreed to take part only in a theft. *Id.* at 910-911.

This case, however, is in the opposite fact pattern. Here it was Mr. Samalia whose actions elevated the planned theft into a robbery. There was no possibility that he erroneously could be convicted as an accomplice to robbery due to Mr. Cliett acting beyond the mutually agreed upon theft. Instead, he was the one who used force and converted the package theft into a robbery.

The court's instructions were correct. There was no error in denying the defendant's requested instructions because the defense was still able to argue its theory of the case.

*Cross-examination of Ms. Melton*

Mr. Samalia next argues that he was deprived of his right to cross-examine Ms. Melton effectively because he was not permitted to ask her the maximum penalty for the original charge of first degree robbery. The trial court did not abuse its discretion in this matter, nor was the defense harmed by the limitation.

An accused has the right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). This right, which applies to the states via the Fourteenth Amendment's Due Process Clause, necessarily speaks to a defendant's right to cross-examine adverse witnesses. *Pointer v. Texas*, 380 U.S. 400, 404-405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). However, the right to cross-examine witnesses is not absolute; the subject-matter of the cross-examination is "limited by general considerations of relevance." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002) (citing ER 401 and ER 403).

Washington follows a three-pronged approach to determine the limitations of a defendant's confrontation clause right to cross-examination. *Id.* at 622. First, the evidence sought must have at least minimal relevance. *Id.* Second, if relevant, the burden is on the State to show that the evidence is "so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Id.* Third, the court must balance the State's interest in excluding prejudicial evidence against the defendant's need for the information; "only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld." *Id.* Ultimately, restrictions on cross-examination are within the discretion of the trial court. This court reviews for abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 752, 202 P.3d 937 (2009).

Bias evidence is generally relevant. *State v. Tate*, 2 Wn. App. 241, 247, 469 P.2d 999 (1970). Further, a defendant enjoys more latitude to expose the bias of a key witness. *Darden*, 145 Wn.2d at 619. In situations where the accomplice has entered a plea of guilty, but not yet been sentenced, it is even more important that the trial court give counsel "great latitude in cross-examination" to ascertain whether the witness expected favorable treatment as a result of his testimony. *Tate*, 2 Wn. App. at 247.

Mr. Samalia argues that he should have been able to ask about what sentence Ms. Melton faced under the original charge in order to expose the jury to her motivations and biases for testifying. The initial problem with this argument is that the defense never attempted to ask Ms. Melton what sentence she faced nor did the trial court prohibit him from doing so. Under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A. RCW, a felon will be sentenced within a specified sentence range dependent on the seriousness of the offense and the offender's prior criminal history unless aggravating or mitigating circumstances exist. RCW 9.94A.505(2)(x), .530(1), .535; *see generally State v. Jones*, 159 Wn.2d 231, 236-237, 149 P.3d 636 (2006); *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). An exceptional sentence may only exceed the standard range if the prosecutor provides notice and proves the existence of an aggravating factor. RCW 9.94A.535-.537; *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012). There is no indication that the prosecutor ever sought an exceptional sentence against any of the robbery suspects.

14

There was no effort to identify the standard range sentence Melton faced for the first degree robbery charge. Instead of comparing the high end of her range to the actual sentence she anticipated receiving, thereby showing exactly what she gained from testifying, defense counsel sought to ask about the statutory maximum sentence facing a person convicted of first degree robbery. That information simply was not relevant to Ms. Melton's situation.[4] She did not face a potential maximum sentence.

The information also was potentially prejudicial to both Mr. Samalia and to the State. Although jurors are told they have no role in punishment decisions, some juror could be misled by the maximum sentence information and consider it to either the benefit or detriment of Mr. Samalia when adjudging the case. The potential for prejudicial misuse of the information was a tenable reason for excluding it.

Exclusion of the maximum sentence also was not prejudicial to Mr. Samalia. He was allowed to do what he professed he wanted to do—show that Ms. Melton was getting a good deal. He had her testify to the "twenty-something" days she expected to serve on

---

[4] Prior to the SRA the information would have been relevant. Under the prior indeterminate sentencing scheme, the court was required to sentence a felon to the maximum sentence and the parole board would impose a minimum term. After the minimum term was served, the parole board would then determine whether the offender would be released at some point prior to serving the maximum sentence. *See* RCW 9.95.001, .010, .040. After enactment of the SRA, the trial judge took on the function of setting a minimum term for anyone sentenced under the indeterminate sentencing act. RCW 9.95.011.

the amended charge and obtained her agreement that the sentence was "almost infinitesimal by comparison" with the robbery charge. TP at 433. Counsel was then able to argue that her good deal was a reason to discredit Ms. Melton's testimony.[5] The defense was not prevented from doing what it wanted to do. As noted in *Fisher*, examination of the *reasons* for a witness's bias is different than examining the *facts* underlying those reasons. 165 Wn.2d at 752-753. The defendant is allowed to get the reasons for bias into the record, but not the factual basis. *Id.* at 753. That was done here.

The trial court properly excluded the irrelevant and potentially prejudicial information. The defense was left with alternative ways of obtaining similar information and did so. There was no error.

*Motion for a New Trial*

Mr. Samalia also argues that the trial court erred in denying his motion for a new trial. Once again the trial court did not abuse its discretion.

We review a trial court's ruling on a motion to declare a mistrial or grant a new trial for abuse of discretion. *E.g., State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983) (mistrial); *State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967) (new trial).

---

[5] While Ms. Melton did help identify Mr. Samalia as one of the actors in this criminal drama, she was not the only one to do so. Between the shop owner's testimony, that of Officer Tarin Smith, the identification card, and the tracking of Mr. Samalia by the dog, he was tied to the offense.

"The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion." *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962).

Mr. Samalia argues that the testimony of Officer Taylor vouched for other witnesses and that the prosecutor committed misconduct in concluding a PowerPoint presentation during closing argument with a slide that said "GUILTY". In each instance, the trial court struck the challenged conduct from the record. In ruling on the motion, the court concluded that its previous actions had adequately addressed the respective situations. That was a tenable rationale.

With respect to the testimony of Officer Taylor, it was arguable whether the answer to counsel's question was error. One witness may not vouch for another. *E.g.*, *State v. Jones*, 117 Wn. App. 89, 91, 68 P.3d 1153 (2003). Nonetheless, defense counsel asked *why* the officer believed as he did and the officer told him—he relied on fellow officers who he knew from his own experience were not lying to him. The answer was offered to answer the question asked, not to bolster the testimony of others. There was no good reason for asking the officer why he believed as he did, but once the question was asked, the defense was bound by the answer.

Assuming error, however, this was not such egregious error that the court's direction to strike the testimony failed to cure the prejudice. It is unlikely that the jury

17

was unduly influenced by the non-surprising testimony that an officer relied on information from other officers and believed it credible.

The issue of prosecutorial misconduct is even clearer. Use of a single slide with the word "GUILTY" does not amount to misconduct. *State v. Walker*, 182 Wn.2d 463, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015). There the court clarified an earlier decision and determined that mere use of the word "guilty," even in all capital letters, does not always constitute an improper expression of the prosecutor's personal opinion. *Id.* at 480 n.6.

Moreover, the court's decision to strike the slide certainly cured any error arising from the brief display. Jurors being asked by the prosecutor to find the defendant "guilty" cannot be surprised when the prosecutor actually uses the word "guilty" in closing argument. It was not an impermissible expression of personal opinion. It was the action the prosecutor asked the jury to take after deliberating on the case.

The trial court did not abuse its discretion in denying the motion for a new trial.

*Courtroom Closure*

Finally, Mr. Samalia argues that the courtroom was improperly closed by a sign stating that the building would close at 4:00 p.m. This argument is one appellate courts have addressed on several occasions and is controlled by a decision of the Washington Supreme Court on virtually identical facts.

18

A defendant has a right to public trial. Const. art. I, § 22. This court reviews an alleged public trial violation de novo. *State v. Easterling*, 157 Wn.2d 167, 173-174, 137 P.3d 825 (2006). The defendant has the burden of showing that a courtroom closure occurred. *State v. Koss*, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014).

Here, nothing in records suggests there was a courtroom closure. While the courthouse normally closed at 4:00 p.m., the trial court continually commented on the record that it was keeping the courthouse unlocked when trial ran later than 4:00 p.m. to ensure public access. Mr. Samalia moved to supplement the record in this case with the record from a reference hearing in *State v. Andy*, No. 31018-3-III, another Yakima County case. *See* Commissioner's Ruling, *State v. Samalia*, No. 31611-4-III (Wash. Ct. App. Apr. 17, 2014) (granting motion). There, the trial court made findings of fact regarding the openness of the Yakima County Courthouse after 4:00 pm in Andy's trial. The trial court found that in spite of the sign, "members of the public will . . . try the door before walking away." Verbatim Report of Proceedings (May 22, 2013) at 179. Further, the court found that "no member of the public was barred or prevented from entering the courthouse and attending the . . . trial if they so desired because of the existence of [the sign]." *Id.*

Andy's case eventually reached the Washington Supreme Court. The court held that there was no public trial violation. *State v. Andy*, 182 Wn.2d 294, 302, 340 P.3d 840 (2014). Specifically the court relied on the trial court's finding that "the sign did not

19

deter any member of the public from accessing the courtroom." *Id.* While the trial court's findings in the *Andy* record are specific to that trial, the general finding that members of the public will try the door before being deterred by the sign is equally applicable here. Given that finding and the holding in *Andy*, these facts are insufficient to demonstrate that the courtroom was closed. Accordingly, there was no public trial violation.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Siddoway, C.J.

No. 31611-4-III

FEARING, J. (concurring) — I concur in the affirmation of the first degree robbery

conviction of appellant Adrian Samalia. I write separately because I disagree with the

majority's analysis in two important respects.

## Cross-Examination of Stacey Melton

Defense counsel asked the State's cooperative witness, Stacey Melton, at trial:

> SCOTT [Defense Counsel]: Ultimately, you were charged with First
> Degree Robbery. Were you not?
> MELTON: Yes.
> SCOTT: You and Adrian Samalia both?
> MELTON: Yes.
> SCOTT: And do you recall what the penalties for First Degree
> Robberies are?
> CHEN [State's Counsel]: Objection.
> JUDGE: Sustained.

3 Tr. of Proceedings (TP) at 393. Note that defense counsel asked Melton if she

"recalled" the penalties, not what were the penalties. Of course, most witnesses do not

understand the subtleties of questions, such that Stacey Melton may not have answered

the question with a simple yes or no, but, if she recalled, testified to her recollection of

the penalties. Thus, we ask whether the trial court erred in excluding evidence of the

possible penalties, including the maximum penalty, the State's witness faced if she refused to testify against Adrian Samalia.

The majority writes that the maximum sentence for first degree robbery was irrelevant to Stacey Melton's "situation" and that she did not face a potential maximum sentence. Majority at 15. The majority does not disclose any basis for this observation. We know nothing about Stacey Melton's criminal history. For all we know, the State would have requested and the trial court would have imposed the highest possible sentence.

Assuming the majority holds or impliedly holds that the maximum sentence of the cooperating witness is always irrelevant or always inadmissible, I disagree. No earlier Washington decision addresses this weighty issue. Cases from foreign jurisdictions primarily hold such evidence to be relevant and rule a bar of such testimony to require a new trial. I collate those decisions in the appendix.

ER 401 declares:

> "Relevant evidence" means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

(Emphasis added.) The threshold to admit relevant evidence is very low. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Even minimally relevant evidence is admissible. *State v. Darden*, 145 Wn.2d at 621. A defendant enjoys more latitude to expose the bias of a State's key witness. *State v. Darden*, 145 Wn.2d at 619.

2

One who faces a life sentence if one does not cooperate with the State has more reason to collaborate with the State than one who faces a five-year sentence. Therefore, the precise punishment, including the maximum amount of punishment one originally encountered before turning State's witness, holds some relevance to one's bias. The latitude afforded defendant in cross-examining a witness bolsters the admissibility of the maximum penalty confronting the witness before the agreement with the prosecution.

The majority only tangentially mentions the basis on which the trial court excluded the evidence of the possible sentence facing Stacey Melton if she refused to oblige the State. The majority also omits that the trial court ruled the evidence germane. Contrary to the majority's ruling, the trial court ruled that the evidence was relevant. The trial court, nonetheless, excluded the evidence based on prejudice to Adrian Samalia, the State, or both parties. The State charged Stacey Melton, like Adrian Samalia, with first degree robbery. Thus, the jury would have heard the sentence also faced by Adrian Samalia. No Washington case weighs the prejudice resulting from the jury hearing the defendant's sentence range with the inability of the defendant to question the State's witness about the length of sentence she avoided. Cases from foreign jurisdictions disagree with one another on this significant question. I include a description of those decisions in the appendix. Some of those cases base the right to question the State's witness on her possible sentence on the United States Constitution's confrontation clause.

I would reserve for another day the question of whether the defense may question the State's collaborating witness as to the maximum sentence or range of sentence faced

3

on the charge dismissed by the State in exchange for the witness's testimony regardless of whether the defendant faces the same charge. We need not answer these questions in this appeal because of a lack of prejudice to Adrian Samalia in being barred from asking these precise questions.

In response to other questioning by defense counsel, Stacey Melton testified that the State had filed a very serious charge against her, that the State would dismiss the very serious charge for her testimony, that the State would reduce the robbery charge to a gross misdemeanor of rendering criminal assistance, that the State would permit her to plead to a charge infinitely less in seriousness, that her sentencing abided her testimony, that the low sentence depended on her testimony, that she believed the State connected the lower sentence to her testimony against Adrian Samalia, that she needed to testify favorably for the State, that the prosecution bestowed her an incredible benefit by her testifying, and that she would receive approximately a twenty-day sentence that she already served. In short, defense counsel completed an effective cross-examination.

More importantly, other evidence overwhelmingly supported Adrian Samalia's conviction. A dog tracked Adrian Samalia as a fleeing suspect. Law enforcement found Samalia's identification on the backseat of the car. Samalia presented no alibi. He called no witnesses.

One decision suggests that precluding the questioning of the State's witness as to the maximum sentence of a conviction she avoided is never harmless. *State v. Bennett*, 550 So. 2d 201, 205 (La. Ct. App. 1989). Other cases employ a harmless error analysis.

4

*United States v. Roan Eagle*, 867 F.2d 436 (8th Cir. 1989); *Jackson v. State*, 37 So. 3d 370 (Fla. Dist. Ct. App. 2010); *State v. Vogleson*, 275 Ga. 637, 571 S.E.2d 752 (2002). I know of no reason why a harmless error analysis should be applied to other errors, even constitutional errors, but not to this error that implicates the constitution's confrontation clause. Under Washington law, a constitutional error is harmless if the appellate court is assured beyond a reasonable doubt that the jury verdict is unattributable to the error. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011). This court employs the "overwhelming untainted evidence" test and looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Anderson*, 171 Wn.2d at 770 (quoting *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985)). The untainted evidence against Adrian Samalia is overwhelming.

Adrian Samalia also assigns error to the trial court's refusal to admit his proposed Exhibit 5 to impeach Stacey Melton. In his assignment, Samalia does not identify the nature of the exhibit. Presumably, the exhibit is the information filed by the State against Stacey Melton, which information included the potential sentence for first degree robbery. Samalia includes no argument in the body of his brief as to why exclusion of the exhibit constituted error. This court does not review issues not argued, briefed, or supported with citation to authority. RAP 10.3(a); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012).

Slide of Guilt

The majority writes that a single slide with the word "GUILTY" does not amount to prosecutorial misconduct. The majority cites *State v. Walker*, 182 Wn.2d 463, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015) for this proposition. *Walker*, like other cases preceding it, approved the use of visual aids during closing statements. The *Walker* court did not hold or even suggest that one slide using the word "GUILTY" does not constitute misconduct.

Fearing, J.

Fearing, J.

APPENDIX

Federal Cases

In *United States v. Scheetz*, 293 F.3d 175 (4th Cir. 2002), the trial court allowed defense counsel to ask cooperating government witnesses about, and the witnesses testified to, the maximum and minimum sentences they faced before reaching an agreement with the government. The defendant appealed because the trial court disallowed questioning about sentencing guidelines. The appellate court affirmed, in part, because of the testimony concerning the maximum and minimum sentence.

In *United States v. Roan Eagle*, 867 F.2d 436 (8th Cir. 1989), the defendant complained about the trial court forbidding of defense counsel from questioning the government's witness about the details of her plea bargain. The reviewing court concluded the limitation was error, despite the trial court's concern that the jury would speculate as to whether the defendant faced a similar sentence. The court noted that the details of the plea are relevant to a jury assessing the credibility of the witness. The court, nonetheless, held the error to be harmless because the cooperating witness's testimony did little to incriminate the defendant.

In *United States v. Dorta*, 783 F.2d 1179 (4th Cir. 1986), the defendants argued that the trial court erred in refusing to allow their counsel to cross-examine the government's chief witness concerning his belief as to what his maximum sentence could have been had he not cooperated with the government. The appeals court recognized that a witness's understanding of what benefits he will receive as a result of his cooperation

with the government is relevant and that the defendant is constitutionally entitled to explore this subject during cross-examination. The court affirmed the convictions, nonetheless, because defense counsel thoroughly examined the witness regarding his understanding of the use immunity he was granted for his grand jury testimony and his understanding of the implications of his plea agreement. The decision does not disclose whether the witness testified to the maximum sentence he faced.

State Cases

In *Jackson v. State*, 37 So. 3d 370 (Fla. Dist. Ct. App. 2010), the trial court precluded defense counsel from questioning State witnesses as to the maximum and minimum sentences they avoided by testifying against the defendant. The reviewing court agreed with the defendant that the trial court committed error. The trial court affirmed the conviction, however, because the error was harmless.

In *State v. Vogleson*, 275 Ga. 637, 571 S.E.2d 752 (2002), the jury heard that the State's witness reached an agreement with the State to testify against the defendant in exchange for the State recommending a sentence of ten years. The trial court precluded, however, defense counsel from asking the witness about his understanding of the disparity between the sentence the State would recommend in exchange for his cooperation and the sentence he would have received without that cooperation. The Georgia Court of Appeals reversed and the Supreme Court affirmed the Court of Appeals. The State argued that such evidence was prejudicial because the jury might conclude that the defendant would receive the same sentence the witness faced without

8

cooperation. The Peach State Supreme Court answered that this problem could be addressed by the trial court giving a limiting instruction. The state high court held that the defendant's confrontation clause rights were infringed and, after reviewing other evidence, the court concluded the error was harmful.

In *State v. Brown*, 303 S.C. 169, 399 S.E.2d 593 (1991), the trial court sustained the State's objection to defense counsel asking the State's witness as to the mandatory length of punishment for the dropped charge. The reviewing court, relying on the United States Constitution's confrontation clause, held that the trial court abused its discretion in limiting cross-examination. The reviewing court remanded the case for a new trial. The court held the jury should be free to weigh the sentence the witness would have received with the sentence actually received. The witness's evidence was crucial to the prosecution. The reviewing court rejected the State's argument that the jury would have learned the defendant's own potential sentence if convicted. Defendant's right to a meaningful cross-examination outweighed the State's interest in shielding evidence of the defendant's prospective sentence from the jury.

In *State v. Bennett*, 550 So. 2d 201 (La. Ct. App. 1989), the reviewing court reversed the defendant's conviction for solicitation of murder. The court held that the trial court erred in refusing the defendant the opportunity to ask the collaborating witness as to the maximum sentence he could have received if he failed to cooperate with the State. The court suggested that impermissibly curtailing cross-examination could never be harmless.

9

In *Meyer v. State*, 498 So. 2d 554 (Fla. Dist. Ct. App. 1986), the reviewing court upheld the trial court's barring of questioning of the State's witness as to the maximum and minimum sentence he faced with his deal with the State. The court considered sufficient the jury's hearing that the witness received a reduced sentence in exchange for testifying. *Meyer v. State* may conflict with *Jackson v. State*.

In *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978), the reviewing court reversed the defendant's conviction for first degree murder. The court held that the trial court committed reversible error in precluding defense counsel from attacking the credibility of a juvenile witness who had participated in the torture of the victim by showing the punishment the juvenile might have received had he not agreed to testify against the defendant. The trial court precluded the testimony on the ground that the jury would hear the possible sentence faced by the defendant. The reviewing court held that this factor did not outweigh the defendant's right to examine the witness as to the penalty he would have faced if he had not agreed to testify.

In *State v. Larrabee*, 377 A.2d 463 (Me. 1977), the reviewing court noted that defense counsel should be free to question the State's witness as to the existence of an agreement and the extent of the benefits the witness will likely obtain by cooperative testimony. Nevertheless, the court refused to reverse the trial court because the State charged the defendant with the same crime that the witness avoided with the agreement. The rule that the jury should not know the sentence that the defendant faced prevailed. The court also rejected the salutary effect of a limiting instruction.

In *State v. Alston*, 17 N.C. App. 712, 195 S.E.2d 314 (1973), the trial judge barred questioning of the State's witness as to the maximum sentence the witness confronted but for his cooperation with the State. The reviewing court held the restriction to violate defendant's right to show bias of a witness and ordered a new trial.